Dasil E. Velez, Esq. (DV 7356)
Greenberg Traurig, LLP
Metlife Building
200 Park Avenue
New York, NY 10166
Tel:  (212) 801 6270
Fax: (212) 805-5511
velezd@gtlaw.com

Michael E. Geltner, Esq. (MG 1403)
Geltner & Associates, P.C.
Number 10 E Street, S.E.
Washington, D.C. 20003
Tel:  (202) 547-1136
Fax: (202) 547-1138
mgeltner@mindspring.com

Attorneys for All Defendants

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re

METIOM, INC.,                                                                 No. 01-12840 (RDD)

                Debtor.
---------------------------------------------------------------X
Bernard Katz, as Creditor Trustee of
Metiom, Inc.,

        Plaintiff,

   v.                                                                            Adv. No. 05-01110 (RDD)

ePlus, inc. *et al*,

        Defendants.
---------------------------------------------------------------X

<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
WITHDRAW THE REFERENCE</u>

1

I.      INTRODUCTION

        The Creditor Trustee has recently filed Adversary Proceeding No. 05-01110 against defendants. The complaint is Exhibit 2. Defendants' right to seek withdrawal of the reference is based upon 28 U.S.C. § 157(d), which provides:

> (d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The first sentence of § 157(d) provides for discretionary withdrawal, but subject to clear standards under In re Orion Pictures Corp., 4 F. 3d 1095 (2nd Cir. 1993) ("Orion"). The second sentence covers mandatory withdrawal: "[t]his mandatory withdrawal provision has been interpreted to require withdrawal to the district court of cases or issues that would otherwise require a bankruptcy judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." City of New York v. Exxon Corp., 932 F. 2d 1020, 1026 (2nd Cir. 1991); In re Ionosphere Clubs, Inc., 922 F. 2d 984, 995 (2nd Cir. 1990) ("substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceedings."); In re Johns-Manville Corp., 63 B.R. 600, 602 (S.D.N.Y. 1986) (Leval, D.J.). See also In re Chateaugay Corp., 193 B.R. 669, 673 (S.D.N.Y. 1996) (Mukasey, D.J.: "Withdrawal is required when the court will be called upon to make a significant interpretation of a non-[Bankruptcy] Code statute \*\*\*, when non-code issues dominate code issues \*\*\*, or when the non-bankruptcy federal law that governs the case significantly and materially conflicts with the relevant bankruptcy provisions" [citations omitted at elipses]).

II.     FACTS

The debtor, Metiom, Inc. ("the debtor"), filed a bankruptcy petition in May 2001. Bankr. S.D.N.Y. No. 01-12840. In that year, there were discussions between the debtor and ePlus Systems, inc., one of the defendants, about an intellectual property asset purchase by the latter. This is the subject of the adversary proceeding. The asset purchase never occurred. In 2002, the Creditor Trustee filed a motion for court approval of a sale of all the debtor's intellectual property to QValent Pty Ltd. ("QValent"). Exhibit 5. The agreement contained a list of software being sold, including ConnectTrade, the subject of the adversary proceeding. Exhibit 5, Schedule 2 (page 14 of document). The Bankruptcy Court approved the sale April 5, 2002. Exhibit 6. Shortly afterward, there was a filing at the U.S. Copyright Office ("USCO") assigning the one registered copyright in the package of software sold to QValent. Exhibit 7.

On January 12, 2005, the Creditor Trustee registered a copyright at USCO for software titled "ConnectTrade integration." The Creditor Trustee then filed the adversary proceeding. It charges defendant with copyright infringement and misappropriation of trade secrets in relation to the ConnectTrade Technology. Exhibit 2, ¶s 1-4. The theory of the Creditor Trustee's case is that defendants used the 2001 offer process as a cover for a scheme to steal the debtor's intellectual property and customers. The claims charge defendants with Breach of Contract, Breach of Confidentiality Agreement, Breach of Covenant of Good Faith and Fair Dealing, misappropriation of Trade Secrets, all referring to the ConnectTrade technology, Copyright Infringement and Intentional Interference with Prospective Business Advantage. The relief sought includes damages and an injunction against infringement or unfair competition. Exhibit 2, page 17.

Attached is a declaration of defendants' counsel setting forth some of defendants' intended defenses which involve significant issues under the Copyright Act, 17 U.S.C. § 1 *et seq*. Geltner Declaration ¶ 6. Defendants also intend to seek a jury trial. Geltner Declaration ¶ 7. These are pertinent to both mandatory and discretionary withdrawal.

III.  ARGUMENT

    A.  Mandatory Withdrawal

The criteria for mandatory withdrawal are set forth above. Judge Preska has pointed out that, while the case law in this circuit is "well-settled," the cases "are of limited usefulness," because "the inquiry is necessarily fact specific, and absent a decision involving virtually identical claims on an equally identical set of facts, reference to prior decisions is of marginal assistance." Mishkin v. Ageloff, 220 B.R. 784, 795-6 (S.D.N.Y. 1998) [citations omitted]. There are some obvious points supporting mandatory removal in this case. First, the action sought to be removed is an adversary proceeding, rather than a regular bankruptcy matter. Second, it is a non-core proceeding; the complaint could as easily have been filed in this court as in bankruptcy court and simply sets out several claims under state law and one under the Copyright Act. Third, there are *no* issues of bankruptcy law to be considered; they are not referenced in the complaint, and there are no bankruptcy-law-based defenses to be asserted. Most importantly, defendants believe that the issues to be raised under the Copyright Act are substantial and material and involve significant interpretation of the Copyright Act. The issues are:

    a.    Was the Creditor Trustee the owner of the work so as to be able to (i) register it January 12, 2005, and (ii) sue for infringement, after he had sold all of Metiom's intellectual property, including Metiom's ConnectTrade?

    b.    Can the Creditor Trustee be damaged when he has sold all of his rights in the work?

    c.    Can the Creditor Trustee seek injunctive relief when he is no longer the owner of the work and is not using the work?

    d.    Are the misappropriation of trade secrets and breach of confidentiality causes of action, both of which reference ConnectTrade, preempted by the Copyright Act, 17 U.S.C. § 301?

    e.    Can the Creditor Trustee satisfy the proof elements for copyright infringement of a computer program when it is indisputed defendants possessed neither the source code nor the object code? In this connection, there are several versions of the work, and the Creditor Trustee, relying on an unauthenticated email (Exhibit 9), has claimed at the most that earlier versions of a CD with some code (but no source code) were installed on defendants' computer (which defendants have disputed).[1]

    1.    <u>Ownership Issues</u>

Copyright registration, a prerequisite to suit for infringement, is limited to "the owner of copyright or of any exclusive right in the work." 17 U.S.C. § 408(a). Ownership is covered by § 201. The Second Circuit has, in different contexts, discussed the standing of a party who has transferred copyright ownership and registered and/or sued on the work, and it is a difficult and complicated issue, with the law by no means settled. See <u>Morris v. Business Concepts, Inc.</u>, 259

---

[1] Geltner Declaration ¶ 6.

F. 3d 65 (2nd Cir. 2001), opinion clarified on denial of rehearing, 283 F. 3d 502 (2nd Cir. 2002). In the latter opinion, the court noted that, while it relied on Ninmer and at least one other treatise in its conclusion that "an owner of a particular right – as opposed to the copyright itself – would not be a copyright owner," 283 F. 3d at 503, "others are not so clear or perhaps are even contrary." Id. Given his sale of Metiom's intellectual property to QValent, the Creditor Trustee's claims to register the work and bring this suit involve significant interpretations of the Copyright Act.

    2.    Preemption Issues

The Second Circuit has set out criteria for application of Copyright Act § 301's preemption provisions. See Computer Associates Int'l, Inc. v. Altai, Inc., 982 F. 2d 693, 716-18 (2nd Cir. 1992) (amended opinion) ("Computer Associates"). While defendants believe that the misappropriation of trade secrets, as well as parts of the breach of contract and breach of confidentiality claims are preempted under Computer Associates, it is a difficult analysis requiring application of the "extra element" test of Computer Associates to see if the state law created right is "equivalent" to the rights protected by copyright law and whether any "extra element" makes the claim "qualitatively different from" a copyright claim. See Lennon v. Seaman, 63 F. Supp. 2d 428, 436 (S.D.N.Y. 1999). There is no consensus on breach of contract claims and preemption. See Id. at 437, collecting cases.

    3.    Infringement

In Computer Associates, *supra*, the court noted that "the growth of computer science has spawned a number of challenging legal questions, particularly in the field of copyright law." Id. at 696. The test for copying requires inquiry into access to the work and substantial similarity, Id. at 701. The literal elements of a computer program, i.e., source code and object code, are

6

copyright protected.  Id. at 702.  In this case, though the Creditor Trustee has contended (against defendants' denials) that Metiom's staff installed two older versions of the software on an ePlus server, see Exhibit 9, there has been no contention that defendants ever had access to Metiom's source code.  Under Computer Associates, there can also be protection for the "non-literal elements" of a computer program, id. at 702-3.  Determining the latter, however, requires a difficult inquiry into the idea vs. expression dichotomy central to copyright law.  Id. at 703-6.  Computer Associates adopts a three part test for making the inquiry.  Id. at 706-712.  While "the test has been followed and widely accepted... Nonetheless, district courts have found it difficult to apply the test consistently."  O.P. Solutions v. Intellectual Property Network, 1999 U.S. Dist. LEXIS 979 at *19, n. 3 (S.D.N.Y. 1999), 50 U.S.P.Q. 2d (BNA) 1399, 52 U.S.P.Q. 2d (BNA) 1818, Copy. L.Rep. (CCH) P 27, 887 (S.D.N.Y. 1999) (Preska, D.J.).

This case involves exclusively non-Bankruptcy Code issues, and it can be seen that the Copyright Act issues are difficult, substantial and material and involve significant interpretations of the Act.  For that reason, withdrawal is mandatory.

      B.       Discretionary Withdrawal

In Orion, *supra*, the Second Circuit reversed a district court's refusal to withdraw the reference on a contract claim even though it was closely involved with a core matter (assume/reject order).  4 F. 3d at 1100-1102.  The court noted factors which were considered: core or non-core, uniformity in bankruptcy law and administration, reduction of forum shopping, legal or equitable.  Id.  The court said the threshold inquiry should be core versus non-core and noted that, where the case is non-core and there is a jury demand, that would be a basis for the district court to find that the bankruptcy court's inability to hold the trial "constitutes cause to withdraw the reference."  Id. at 1101.  The court of appeals rejected the contention that a

traditional suit can become core because a recovery for the Trustee would impact the estate. Id. at 1102.

In a non-core proceeding, the district court on appeal exercises *de novo* review of all issues, including issues of fact. Under the Seventh Amendment, where there is a right to jury trial, this *de novo* review of fact decisions is inconsistent with "the Seventh Amendment's Reexamination Clause." Orion, 4 F. 3d at 1101. See also Control Center, LLC v. Lauer, 288 B.R. 269, 279-280 (M.D. Fla. 2002) (reference withdrawn because jury demand creates Seventh Amendment conflict). The Seventh Amendment prevents a jury trial of the adversary proceeding in bankruptcy court. Orion, 4 F. 3d at 1101.

In Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340 (1998), the Supreme Court held there is a Seventh Amendment right to a jury trial in a Copyright Infringement damage action, even if statutory damages are sought. The Second Circuit has more recently held that, because of Feltner, *de novo* review is impermissible in a copyright infringement suit; "we hold that a jury's findings as to 'substantial similarity' are subject to the same deferential review under Rule 50 that applies to other findings." Yurman Design, Inc. v. PAJ, Inc., 262 F. 3d 101, 111 (2nd Cir. 2001). While the first sentence of § 157(d) is discretionary, the application of Orion to this adversary proceeding mandates withdrawal; it is non-core, and the Seventh Amendment-mandated jury trial cannot occur in bankruptcy court.

IV.    CONCLUSION

For the foregoing reasons, the court is requested to sign the attached order withdrawing the reference.

                                        Respectfully submitted,

                                        _____/s/_____
                                        Michael E. Geltner, Esq. (MG 1403)
                                        Geltner & Associates, P.C.
                                        Number 10 E Street, S.E.
                                        Washington, D.C. 20003
                                        Tel:  (202) 547-1136
                                        Fax: (202) 547-1138
                                        mgeltner@mindspring.com

                                        Dasil E. Velez, Esq. (DV 7356)
                                        Greenberg Traurig, LLP
                                        Metlife Building
                                        200 Park Avenue
                                        New York, NY 10166
                                        Tel:  (212) 801 6270
                                        Fax: (212) 805-5511
                                        velezd@gtlaw.com

                                        Attorneys for Defendants

Of Counsel:
Erica Stoecker, Esq. (*pro hac vice*)
ePlus, inc.
13595 Dulles Technology Drive
Herndon, VA 20171-3413
Tel:  (703) 984-8120
Fax: (703) 984-8720
estoecker@eplus.com

9

Case 1:05-cv-02490-PKC   Document 1-2   Filed 03/02/05   Page 10 of 10