Andrew I. Silfen (AS-1264)
Schuyler G. Carroll (SC-0100)
Michael S. Cryan (MC-4887)
Jeffrey D. Vanacore (JV-4136)
ARENT FOX PLLC
1675 Broadway
New York, New York 10019
(212) 484-3900

Attorneys for Bernard Katz, Creditor Trustee

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re

METIOM, INC.,

               Debtor.
--------------------------------------------------------x
BERNARD KATZ,
CREDITOR TRUSTEE OF METIOM, INC.,            05 Civ. 2490 (PKC)

               Plaintiff,                 (Bankr. S.D.N.Y.: Chapter 11,
                                            Case No. 01-12840 (RDD))
               v.

EPLUS INC., EPLUS GROUP, INC., EPLUS
TECHNOLOGY, INC., EPLUS
GOVERNMENT, INC., EPLUS CANADA
COMPANY, EPLUS CAPITAL, INC., EPLUS
SYSTEMS, INC., EPLUS CONTENT
SERVICES, INC., EPLUS DOCUMENT
SYSTEMS, INC. and EPLUS INFORMATION
HOLDINGS, INC.,

               Defendants.
--------------------------------------------------------x

## MEMORANDUM OF LAW OF BERNARD KATZ, CREDITOR TRUSTEE OF METIOM, INC. IN OPPOSITION TO MOTION BY EPLUS INC. TO WITHDRAW THE REFERENCE

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................... 1

BACKGROUND ........................................................................................ 2

ARGUMENT EPLUS HAS NOT AND CANNOT MEET THE STANDARD
    REQUIRED FOR WITHDRAWAL OF THE REFERENCE ............................. 8

    A.    The Motion Must Be Denied As Premature ............................... 8

    B.    ePlus Has Not And Cannot Meet The Mandatory Withdrawal
        Standard .......................................................................... 10

    C.    ePlus Has Not And Cannot Meet The Permissive Withdrawal
        Standard .......................................................................... 13

CONCLUSION ........................................................................................ 18

## TABLE OF AUTHORITIES

**Page**

Federal Cases

Morris v. Business Concepts, Inc., 259 F.3d 65 (2d Cir. 2001) ........................................ 13

City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d. Cir. 1991) ....................... 11

Edgcomb Metals Co. v. Eastmet Corp., 89 B.R. 546, 554 (D. Md. 1988) ...................... 14

Hassett v. BancOhio National Bank (In re CIS Corp.), 172 B.R. 748, 753 (S.D.N.Y. 1994) ........................................................................................................................ 11

Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992 (5th Cir. 1985) ............. 10

Hunnicutt Co. v. TJX Cos. (In re Ames Dep't Stores), 190 B.R. 157 (S.D.N.Y. 1995)..... 8

In re American Community Services, Inc., 86 B.R. 681 (D. Utah 1988)........................ 14

In re Geauga Trenching Corp., 110 B.R. 638 (Bankr. E.D.N.Y 1990)............................ 14

In re Hickman, 151 B.R. 125 (Bankr. N.D. Ohio 1993)................................................. 4, 5

In re Iridium Operating, LLC, 285 B.R. 822, 836 (S.D.N.Y. 2002)................................ 18

In re Johns-Manville Corp., 63 B.R. 600, 602 (S.D.N.Y. 1986) ..................................... 11

In re Keene Corp., 182 B.R. 379, 382 (S.D.N.Y. 1995).................................................. 11

In re Orion Pictures Corp., 4 F.3d 1095 (2d Cir. 1993)................................................ 13

In re White Motor Corp., 42 B.R. 693, 703 (N.D. Ohio 1984)....................................... 11

Kenai Corp. v. National Union Ins. Co., 136 B.R. 59, 61-62 (S.D.N.Y. 1992) ................ 9

Mishkin v. Ageloff, 220 B.R. 784 (S.D.N.Y. 1998)....................................................... 13

Morris v. Business Concepts, Inc., 259 F.3d 65 (2d Cir. 2001) ...................................... 13

Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50 (1982)........ 14

Wedtech Corp. v. Banco Popular de Puerto Rico, 94 B.R. 293, 295-296 (S.D.N.Y. 1988) ..................................................................................... 9, 17, 18

Timothy Mellon v. Delaware & Hudson Railway Co. et al. (In re Delaware & Hudson Railway Co.), 122 B.R. 887, 897 (D. Del. 1991).......................................................... 9

Federal Statutes

18 U.S.C. § 157(b)(1) ................................................................................................... 13

28 U.S.C. § 1334(b) ..................................................................................................... 10

28 U.S.C. § 157(a) ....................................................................................................... 10

28 U.S.C. § 157(d) .............................................................................................. 1, 11, 13

Magistrates Act, 28 U.S.C. § 636 ................................................................................ 10

Bernard Katz, as creditor trustee (the "Creditor Trustee") of Metiom, Inc. (the

"Debtor"), by his attorneys, Arent Fox PLLC, respectfully submits this memorandum of

law in opposition to the motion by ePlus[1] to withdraw the reference of this adversary

proceeding from the United States Bankruptcy Court for the Southern District of New

York (the "Bankruptcy Court").

## PRELIMINARY STATEMENT

The motion by ePlus to withdraw the reference is premature and should be denied.

The Creditor Trustee has alleged meritorious claims for theft of trade secrets and

copyright infringement against ePlus.  The property at issue was property of the

bankruptcy estate and was misappropriated by ePlus at a time when the Debtor's assets

were under the protection and supervision of the Bankruptcy Court.  The defense alleged

by ePlus in its answer and motion papers presents no novel issue of law.  To the contrary,

ePlus merely disputes the Debtor's ownership interest in its own trade secrets and

intellectual property rights.  ePlus relies on the Debtor's subsequent sale of certain assets

to a third party to absolve ePlus from liability for its wrongful conduct, which occurred

after the bankruptcy petition was filed but prior to the asset sale.

ePlus has not carried, and cannot carry, its substantial burden to withdraw the

reference from the Bankruptcy Court to the United States District Court for the Southern

District of New York (the "District Court").  ePlus has not met either the permissive or

mandatory withdrawal standards of 28 U.S.C. § 157(d) as interpreted by courts of this

District.  Even if ePlus could meet its burden -- which it cannot -- the request for

---

[1]  The Defendants in the adversary proceeding are ePlus inc., ePlus Group, inc., ePlus Technology, inc., ePlus Government, inc., ePlus Canada Company, ePlus Capital, inc., ePlus Systems, inc., ePlus Content Services, inc., ePlus Document Systems, inc. and ePlus Information Holdings, inc. (the parties are collectively referred to herein as "ePlus").

withdrawal of the reference is premature since well-settled Second Circuit case law makes clear that the Bankruptcy Court should maintain jurisdiction over all matters, unless and until a jury trial is required – even if withdrawal of the reference is appropriate.

## **BACKGROUND**

Nearly four years ago, on May 15, 2001, the Debtor filed a voluntary petition under Title 11 of Chapter 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court. The Bankruptcy Court has expended substantial judicial resources presiding over all phases of the Debtor's case. The record reflects that Bankruptcy Judge Robert D. Drain is very familiar with the issues regarding the Debtor and ePlus, having presided over numerous hearings concerning ePlus. Moreover, Bankruptcy Judge Drain has a thorough understanding of the overall context of the Debtor's Chapter 11 case, having presided over dozens of adversary proceedings and contested matters.

During the pendency of the Debtor's bankruptcy case, four distributions to creditors were made. The result of the Creditor Trustee's work has been a return to creditors of millions of dollars. The Creditor Trustee would like to close this bankruptcy case and make a final distribution to creditors. Pursuant to the confirmed Plan of Reorganization, however, this final distribution cannot be made until there is a resolution of this adversary proceeding against ePlus and the Creditor Trustee is required to hold substantial reserves until it is resolved. Accordingly, the prompt resolution of the ePlus matter is of importance to hundreds of creditors who have been waiting years for their distribution under the Plan that was confirmed by the Bankruptcy Court. In fact, more than six months ago, Bankruptcy Judge Drain expressed significant concern regarding the prejudice creditors are suffering because of the delay in the ePlus case. During the

November 17, 2004 hearing on the ePlus matter (the third hearing Bankruptcy Judge

Drain presided over in the ePlus matter), Bankruptcy Judge Drain stated that he was

"concerned that creditors who have been waiting for their distributions in the case are,

but for this litigation, essentially in a position to get such a distribution."  <u>See</u> November

17, 2004 Hearing Transcript at 9-10, Exh. A.[2]

<u>The Subsequent Asset Sale And Investigation By The Creditor Trustee</u>

On April 5, 2002, the Bankruptcy Court approved the sale of certain intellectual

property rights by the Debtor to a third party.  <u>See</u> Order Approving Purchase Agreement

for Sale of Intellectual Property dated April 5, 2002, Exh B.  Following the sale, the

Creditor Trustee obtained information from former employees of the Debtor concerning

the conduct of ePlus regarding the Debtor's intellectual property rights and trade secrets.

The Creditor Trustee investigated ePlus's conduct, which occurred prior to the asset sale.

This investigation included, with the assistance of the Bankruptcy Court, obtaining

hundreds of documents from ePlus and a review of ePlus' version of the facts which

ePlus provided in an effort to persuade the Creditor Trustee not to commence this action.

Based upon this investigation, however, the Creditor Trustee concluded that meritorious

claims exist against ePlus and commenced this action.

<u>Bankruptcy Court Proceedings In The ePlus Matter</u>

The Creditor Trustee obtained information from certain of the Debtor's former

employees indicating that, rather than consummating its agreement to purchase the

Debtor's assets for two million, one hundred thousand dollars, ePlus converted and

misappropriated the Debtor's intellectual property and trade secrets.  After a review of

---

[2]  All exhibits referenced herein are attached to the Declaration of Schuyler G. Carroll dated May 6, 2005.

the information available to him, the Creditor Trustee determined that additional

information would be needed from ePlus to evaluate the allegations.

Toward that end, on November 18, 2003, the Creditor Trustee filed a motion

pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure with the Bankruptcy

Court.  The Rule 2004 Motion sought documents associated with the Metiom/ePlus

relationship.  On November 25, 2003, Bankruptcy Judge Drain signed an order (the "Rule

2004 Order") directing ePlus to provide discovery to the Creditor Trustee.  ePlus refused

to comply.  On December 11, 2003, ePlus filed a motion to strike the Rule 2004 Order.

ePlus erroneously argued that service of the motion prior to court approval was required,

despite the well-settled procedure in the Bankruptcy Court that specifically allows such

applications to be presented without prior notice.  See, e.g., In re Hickman, 151 B.R. 125

(Bankr. N.D. Ohio 1993) (concluding that Rule 2004 motions can be brought either with

or without notice to the opposing party).

December 18, 2003 Hearing On ePlus' Objection To Rule 2004 Order

On December 18, 2003, the Bankruptcy Court held a hearing on ePlus' objection

to the Rule 2004 Order.  At the hearing, ePlus initially objected to the entry of the Rule

2004 Order.  Prior to oral argument, however, the parties negotiated a resolution to ePlus'

objection.  Pursuant to the agreement, ePlus agreed to produce certain documents related

to the Rule 2004 Order.  Bankruptcy Judge Drain accepted this resolution on the record.

See December 18, 2003 Hearing Transcript at 15-16, Exh. C.

Following the December 18, 2003 hearing, and until October 2004, ePlus and the

Debtor worked under the consensual agreement placed on the record at the December 18,

2003 hearing and approved by Bankruptcy Judge Drain.  As a result of significant and

damaging discovery obtained by the Creditor Trustee during this process, however, ePlus withdrew from consensual discovery with the Creditor Trustee, refused to provide any further documents and returned to the Bankruptcy Court to contest the scope of Bankruptcy Judge Drain's Rule 2004 Order.

November 4, 2004 Hearing

On November 4, 2004, Bankruptcy Judge Drain conducted another hearing regarding ePlus' motion to set aside or limit the Rule 2004 Order.  Bankruptcy Judge Drain reviewed the extensive record before him and the documentary evidence produced by ePlus, as well as those documents obtained independently by the Creditor Trustee. See November 4, 2004 Hearing Transcript at 25-29, Exh. D.

Bankruptcy Judge Drain again concluded that the Creditor Trustee was entitled to the information demanded in the Rule 2004 Order.  On November 4, 2004, Bankruptcy Judge Drain denied ePlus's motion to modify the Rule 2004 Order.  Id.

District Judge Marrero Denies ePlus' Motion To Stay Rule 2004 Order Pending Appeal

On November 10, 2004, ePlus filed a motion to stay the Rule 2004 Order pending appeal.  On November 24, 2004, District Judge Victor Marrero denied ePlus' request for a stay pending appeal.  On December 9, 2004,  District Judge Marrero issued a sixteen-page opinion (Exh. E) outlining his reasons for denying the stay.

In his decision, District Judge Marrero recited and analyzed the procedural background of the Rule 2004 Order as well as the documents produced by ePlus and the Debtor.  District Judge Marrero reviewed the evidentiary findings made by Bankruptcy Judge Drain at the previous hearings and reviewed Bankruptcy Judge Drain's application of the law.  District Judge Marrero determined that Bankruptcy Judge Drain's decision

was proper in all respects.  District Judge Marrero found that ePlus had no substantial possibility of success on the merits of its appeal.  See Exh. E at 14.  District Judge Marrero agreed with Bankruptcy Judge Drain that "creditors who have been waiting for their distributions in the case are, but for this litigation, essentially in a position to get such distribution."  Id. at 16.

ePlus, having lost its motion for a stay pending appeal, continued to pursue its appeal of the Rule 2004 Order in the District Court.  Without the benefit of a stay, however, ePlus was required to produce additional documents.  These documents were sufficient to allow the Creditor Trustee to conclusively determine that meritorious claims exist.  Thus, prior to the appeal being heard, the Creditor Trustee filed the Complaint (Exh. F) against ePlus in the Bankruptcy Court.

Creditor Trustee Asserts Meritorious Claims Against ePlus

In February 2005, the Creditor Trustee determined that the evidence of wrongdoing by ePlus was sufficient to warrant the commencement of an adversary proceeding.  The evidence shows a scheme by ePlus to misappropriate the Debtor's customers, intellectual property and trade secrets.

The scheme apparently began when ePlus contacted the Debtor purporting to express an interest in the possible "purchase" of the Debtor's intellectual property.  The parties first entered into a confidentiality agreement, requiring ePlus to hold any information and trade secrets in confidence and such information only was to be used for the purpose of evaluating whether or not to enter into a transaction with the Debtor.  See Form of Confidentiality Agreement (unsigned copy), Exh. G.  The parties memorialized the sale agreement on July 30, 2001.  See Letter Agreement dated July 30, 2001, Exh. H.

Under the Letter Agreement, ePlus agreed to pay the Debtor $2.1 million for substantially all of the Debtor's assets, as well as providing a deposit of $250,000. The parties also contemplated that ePlus would hire most, if not all, of the Debtor's remaining employees. ePlus, apparently never intended to give any consideration to the Debtor, and ePlus breached the agreement prior to its submission to the Bankruptcy Court for approval. After executing the Agreement, the Debtor provided ePlus with a copy of the Debtor's source code. ePlus was also provided with full access to all of the Debtor's employees, trade secrets and customer lists. Contrary to its obligations under the confidentiality agreement and its agreement to purchase the source code, however, ePlus incorporated the Debtor's source code into ePlus's own product and set about attempting to take the Debtor's customers. In this regard, it is important to note that at this point it was certain (and public) that the Debtor's operations would be terminated promptly if no sale could be completed. Thus, ePlus was well aware that the Debtor could not compete against its efforts. In so doing, ePlus deprived the Debtor of the ability to consummate an alternate sale. Indeed, after ePlus' actions, at least one potential suitor cited the potential loss of customers as its reason for not seeking to purchase the Debtor's assets.

ePlus sought to cloak its breach under the "due diligence" provision of the Agreement. The due diligence process was, unknown to the Debtor, designed to induce the Debtor's unsuspecting representatives to install the Debtor's software on ePlus' computer servers so that ePlus could obtain the Debtor's assets without paying for them. In August 2001, after ePlus advised the Debtor that a more formal agreement, which did not contain due diligence provisions and which would be submitted to the Bankruptcy Court for approval, was ready to be executed, several of the Debtor's employees traveled

from New York to ePlus' facilities in Avon, Connecticut.  After the Debtor's source code was installed on ePlus' computers, ePlus claimed it was no longer interested in the transaction and refused to move forward with its purchase.

The Complaint (Exh. F) alleges six causes of action relating to ePlus' improper actions and theft of the Debtor's property.  The Complaint seeks recovery for the following causes of action: (1) breach of contract; (2) breach of confidentiality agreement; (3) breach of covenant of good faith and fair dealing; (4) misappropriation of trade secrets; (5) copyright infringement; and (6) intentional interference with prospective economic advantage.

On February 28, 2005, ePlus filed an Answer (Exh. I) in the Bankruptcy Court. The next conference before the Bankruptcy Court in this matter is scheduled for May 10, 2005.

## **ARGUMENT**

### **EPLUS HAS NOT AND CANNOT MEET THE STANDARD REQUIRED FOR WITHDRAWAL OF THE REFERENCE**

ePlus' motion to withdraw the reference is premature and fails to satisfy the standards for either mandatory or permissive withdrawal of the reference from the Bankruptcy Court.

**A.     The Motion Must Be Denied As Premature.**

ePlus' motion to withdraw the reference is premature because, under well-settled case law from this District and others, the Bankruptcy Court conducts all proceedings up to the time that a jury trial may be necessary.  See Hunnicutt Co. v. TJX Cos. (In re Ames Dep't Stores), 190 B.R. 157 (S.D.N.Y. 1995) (Judge Koeltl) (concluding that, the bankruptcy judge's familiarity with the underlying bankruptcy case puts the bankruptcy

judge in the best position to administer the case up until trial); <u>Kenai Corp. v. National Union Ins. Co.</u>, 136 B.R. 59, 61-62 (S.D.N.Y. 1992) (Judge Wood) (concluding that, like in the instant case, given the bankruptcy judge's familiarity with the case, the bankruptcy judge is better situated to monitor the proceedings at the pre-trial stage); <u>Timothy Mellon v. Delaware & Hudson Railway Co. et al. (In re Delaware & Hudson Railway Co.)</u>, 122 B.R. 887, 897 (D. Del. 1991) (Judge Farnan) (concluding that when the bankruptcy judge has already participated extensively in the proceedings --as is the case in this adversary proceeding -- it is only logical to leave the reference in place until the case is ready for trial); <u>Wedtech Corp. v. Banco Popular de Puerto Rico</u>, 94 B.R. 293, 295-296 (S.D.N.Y. 1988) (Judge Leisure).

ePlus' motion would be premature even if grounds exist to withdraw the reference – which they do not.  <u>Wedtech</u> is the seminal case on this issue.  In <u>Wedtech</u>, Judge Leisure addressed the defendant's motion to withdraw the reference in a fact pattern where the underlying legal issues were non-core and not suitable for final disposition by the Bankruptcy Court.  The <u>Wedtech</u> court determined the core/non-core distinction determines whether ultimate disposition by the District Court is required, but does not end the inquiry as to <u>when</u> withdrawal is appropriate.  <u>Id</u>.  The <u>Wedtech</u> court found that unless grounds exist for mandatory withdrawal (which do not exist in this adversary proceeding, <u>see</u> infra Section B.), cases at the pre-trial stage are better handled by the Bankruptcy Court to conserve judicial resources and promote efficiency within the bankruptcy process.  <u>Id</u>. at 297.

The <u>Wedtech</u> analysis is directly applicable to ePlus' request for withdraw of the reference.  During the pendency of the Debtor's bankruptcy case, Bankruptcy Judge

Drain has presided over every aspect of the Debtor's liquidation.  Bankruptcy Judge

Drain is in the best position to integrate his knowledge of the Debtor's case with the facts

of this adversary proceeding.  Bankruptcy Judge Drain is already well versed in the

present dispute, having (i) already ruled on several motions by ePlus, one of which was

affirmed on appeal by District Court Judge Marrero, (ii) held three hearings over the past

year and a half regarding various disputes raised by ePlus and (iii) presided over a pre-

trial status conference scheduled for May 10, 2005.[3]

      There is nothing unusual about assigning pre-trial matters from an Article III to an

Article I judge.  Assigning pre-trial proceedings to a Bankruptcy Judge is analogous to

already existing practice in the District Court.  District Court judges routinely assign

matters to Article I Magistrate Judges pursuant to the Magistrates Act, 28 U.S.C. § 636.

See Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992 (5th Cir. 1985)

(analogizing magistrate functions to that of a bankruptcy judge).

**B.**     **ePlus Has Not And Cannot Meet The Mandatory Withdrawal Standard.**

      The United States District Courts have original jurisdiction over all cases or

proceedings arising in or related to Title 11 of the United States Code.  See 28 U.S.C. §

1334(b).  In the Southern District of New York, like most judicial districts, all bankruptcy

cases and proceedings are automatically referred to the Bankruptcy Court, pursuant to the

Standing Order of Referral of Cases to Bankruptcy Judges dated July 19, 1984 (Judge

Ward).  See 28 U.S.C. § 157(a).  In order for the District Court to withdraw the reference

of a bankruptcy case or proceeding, the moving party must satisfy either the "mandatory"

---

[3]  This conference has not yet occurred as of this writing, but will be conducted by the Bankruptcy Judge
before the District Court hears this motion.

or "permissive" standards of 28 U.S.C. § 157(d).  Here, ePlus has not and cannot meet either standard.

Courts have interpreted the mandatory withdrawal provisions of Section 157(d) to require mandatory withdrawal to the District Court only when a Bankruptcy Court judge is required "to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."  City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d. Cir. 1991) (emphasis added).  Courts routinely conclude that mandatory withdrawal does not include cases where there is simply interplay between Title 11 and other titles of the United States Code.  In re Johns-Manville Corp., 63 B.R. 600, 602 (S.D.N.Y. 1986), citing In re White Motor Corp., 42 B.R. 693, 703 (N.D. Ohio 1984).

More recent case law makes clear that, mandatory withdrawal should be narrowly applied. Hassett v. BancOhio National Bank (In re CIS Corp.), 172 B.R. 748, 753 (S.D.N.Y. 1994).  Mandatory withdrawal is not appropriate unless complex issues of first impression of non-Code law are raised.  See In re Keene Corp., 182 B.R. 379, 382 (S.D.N.Y. 1995).  In Keene, like the instant case, the defendants sought withdrawal of the reference based on the mistaken argument that complicated issues of first impression were implicated under non-Code law.  In Keene, the court concluded that it was unclear whether there were any issues requiring significant interpretation and concluded that mandatory withdrawal was not warranted.  The standard announced by Keene is that unless there is a complicated issue of first impression that is clearly evident and necessarily will be decided, mandatory withdrawal is not appropriate.  Id.

ePlus contends that mandatory withdrawal is appropriate here because the adversary proceeding charges defendant with copyright infringement and misappropriation of trade secrets. ePlus states that it intends to defend against the complaint on the grounds that the Creditor Trustee did not own the intellectual property at issue, hence it had no right to obtain copyright protection. ePlus' argument is that the software ePlus misappropriated was subsequently sold and that the Debtor is not the true owner of the property in question. Thus, the argument raised by ePlus is nothing more than whether the Debtor owned the property it obtained copyright protection on.

This dispute presents no novel or complex issues of copyright law. Rather, this case presents a garden-variety question of ownership of the trade secrets and intellectual property at the time of the misappropriation. Here, the Debtor's ownership of these rights is easily demonstrated. The Debtor owned all of its trade secrets and intellectual property rights until it sold a portion of these rights pursuant to the asset sale approved by the Bankruptcy Court on April 5, 2002. See Order Approving Sale of Certain Intellectual Property Assets dated April 5, 2002, Exh. B. ePlus's misappropriation of this information occurred in or about August 2001, long before any rights were conveyed. Moreover, the source code transferred pursuant to the asset sale did not include the version misappropriated by ePlus. The defense ePlus asserts involves Bankruptcy law, specifically the application of Bankruptcy Code Section 363 (use, sale or lease of property) and Section 541 (property of the estate). The fact that state law pertaining to trade secrets and federal law regarding copyright supply the legal claims does not mandate withdrawal of this matter.

The cases cited by ePlus are inapposite and easily distinguishable because those cases did raise novel questions of law.  See, e.g., Mishkin v. Ageloff, 220 B.R. 784 (S.D.N.Y. 1998)  (withdrawing reference in matter raising novel and complex questions of first impression under the Private Securities Litigation Reform Act of 1995).  The decision in Morris v. Business Concepts, Inc., 259 F.3d 65 (2d Cir. 2001), op. clarified, reh'g denied, 283 F.3d 502 (2d Cir. 2002), cited by ePlus, is equally inapplicable.  Morris raises complex and novel issues and concerns concurrent ownership rights in a single published work in an action between an author and publisher, and has no application to the present case.  Obviously, these cases are not relevant to the case at bar.

**C.      ePlus Has Not And Cannot Meet The Permissive Withdrawal Standard.**

The permissive withdrawal standard of Section 157(d) allows the District Court to withdraw the reference "for cause shown."  See 28 U.S.C. § 157(d).  The seminal case in this circuit is In re Orion Pictures Corp., 4 F.3d 1095 (2d Cir. 1993).   The Orion Court set forth the following factors to guide courts in determining when withdrawal of the reference is appropriate: (i) whether the matter is core or non-core; (ii) the prevention of forum shopping; (iii) potential delay in the administration of the bankruptcy case; (iv) demand for a jury trial by either party; (v) judicial economy and the uniform administration of bankruptcy law; (vi) legal or equitable concerns.  No single factor is dispositive.  Here, however, there is little doubt that the factors clearly favor denial of the motion.

The first of the Orion factors is whether the matter is a core or non-core proceeding.  Core proceedings "arise under" or "arise in" a case under Title 11.  See 18 U.S.C. § 157(b)(1).  Core proceedings are those that directly pertain to the administration of the debtor's chapter 11 case.  See In re American Community Services, Inc., 86 B.R.

681 (D. Utah 1988), citing Northern Pipeline Construction Co. v. Marathon Pipeline Co.,

458 U.S. 50 (1982).  Section 157(b)(2) of the Bankruptcy Code sets forth a non-exclusive

list of core matters.

The Complaint is a Core Matter

The ePlus matter is core for two main reasons.  First, the intellectual property and

trade secrets were property of the Debtor's post-petition estate at the time ePlus

wrongfully took possession of these estate assets.  See Bankruptcy Code Section

541(a)(1) (estate is created upon the commencement of a bankruptcy case and comprised

of all legal or equitable interests of the debtor in property, except for specifically

enumerated exceptions).

Second, the ePlus matter is also a core proceeding because the actions complained

of occurred entirely in the post-petition period.  Indeed, the entire Complaint revolves

around facts that occurred solely after the Debtor's Chapter 11 filing.  As described

previously, just months after the Debtor filed for bankruptcy, ePlus and the Debtor

entered into a contract for the sale of substantially all of the Debtor's assets.  See Letter

Agreement dated July 30, 2001, Exh. H.  ePlus breached the agreement and is liable for

the resulting damages, as well as damages for wrongfully retaining the intellectual

property and trade secrets after breaching the contract.

Courts have consistently ruled that issues concerning contracts entered into by the

debtor subsequent to the filing of a bankruptcy petition constitute core matters.  In re

Geauga Trenching Corp., 110 B.R. 638 (Bankr. E.D.N.Y 1990) (finding that proceedings

regarding post-petition contracts are core matters); see Edgcomb Metals Co. v. Eastmet

Corp., 89 B.R. 546, 554 (D. Md. 1988) (entity that knowingly contracts with a debtor in

possession is deemed to consent to the jurisdiction of the Bankruptcy Court and any dispute becomes a core matter).

Here, similar to the post-petition relationship between the debtor and defendant found in Edgcomb and Eastmet, the Debtor and ePlus entered into both the negotiations for the sale of the Debtor's intellectual property and the resulting contract well after the petition date and there is no question that ePlus was aware the Debtor had already commenced a Chapter 11 case.  Accordingly, this adversary proceeding is a core proceeding pursuant to Section 157(b)(2).  As a result, the Bankruptcy Court is authorized to "hear and determine" all matters within the adversary proceeding.  See Section 157(b)(1).

This Court Should Not Permit ePlus to Engage in Forum Shopping

The second factor, forum shopping, warrants denial of the motion. EPlus' motion to withdraw the reference presents a classic example of forum shopping.  The Bankruptcy Court is in the best position to move the case forward based on its understanding of both the underlying bankruptcy case as well as this lone remaining adversary proceeding, having already spent eighteen months overseeing the Creditor Trustee's Rule 2004 Order. ePlus never attempted to withdraw the reference in any of the previous disputes heard by the Bankruptcy Court.  Now after having received several adverse decisions in the Bankruptcy Court, ePlus seeks to litigate the case in an alternative forum.  As previously noted, because ePlus chose to contract with a debtor-in-possession, the merits of the case are properly decided by the Bankruptcy Court.  ePlus should not be permitted to select the forum it believes is most beneficial to its case.

The Potential for Delay in the Bankruptcy Case Requires Denial of the Motion

The third factor is the potential delay in the administration of the bankruptcy case. Both Bankruptcy Judge Drain and District Judge Marrero already stated that the ePlus adversary proceeding is preventing the final distribution to creditors.  <u>See</u> Order dated December 9, 2004, Exh. E at 16 (Judge Marrero echoed Judge Drain's concerns regarding the prejudice creditors are suffering because of the delay in this lone remaining proceeding).  The Debtor's bankruptcy case and related proceedings are complete, with the exception of the ePlus matter and the final distribution to creditors.  <u>See</u> November 17, 2004 Hearing Transcript at 7-8, Exh. A.  The Creditor Trustee has made four distributions and has been on the verge of making the final distribution for many months, pending the outcome of the ePlus adversary proceeding.  A continued delay in these proceedings will negatively impact hundreds of creditors who have been waiting nearly four years to receive their final distribution.

It is important to note that Bankruptcy Judge Drain and District Judge Marrero have already ruled that any delay in closing the Debtor's bankruptcy case will have an immediate and harsh result for creditors.  Bankruptcy Judge Drain concluded the potential harm to creditors was significant when he stated he was "concerned that creditors who have been waiting for their distributions in the case are, but for this litigation, essentially in a position to get such distribution."  <u>See</u> November 17, 2004 Transcript at 9-10, Exh. A.  Bankruptcy Judge Drain went on to conclude that the delay in the proceedings was preventing the Creditor Trustee from making a distribution of the funds currently in the estate.  <u>Id</u>. at 10.

Delay to creditors is precisely the kind of immediate and serious harm that Congress intended should be given serious consideration when district courts consider the

consequences of withdrawing the reference, as noted by Senator DeConcini in his floor testimony during debate on the 1984 BAFJA amendments.  See 130 Cong. Rec. 17154 (June 19, 1984).   Accordingly, this Court should deny the motion to ensure there is no further delay.

The Mere Demand for a Jury Trial Is Not Sufficient to Require Withdrawal

The fourth factor, ePlus' request for a jury trial, does not require the Court to withdraw the reference at this juncture.  As stated previously, the majority of case law in this circuit and others supports leaving proceedings in the Bankruptcy Court until the case is ready for trial.  Because the vast majority of cases are settled prior to trial, courts have concluded this approach is an efficient and common sense solution for dealing with the jury trial issue.  Should this case proceed to trial and a jury trial is appropriate (and still desired by ePlus), the District Court may withdraw the reference at the appropriate time.  See In re Wedtech Corp., (concluding that "disturbing the reference at this pre-trial stage would defy logic"). 94 B.R. at 297.

Judicial Economy Requires Denial of the Motion

The fifth factor, considerations of judicial economy, clearly militates against withdrawing the reference.  Bankruptcy Judge Drain has presided over this bankruptcy case for years.  Like every bankruptcy case, no one proceeding within the case can be heard in a vacuum.  The ePlus matter is no exception.  Although the Complaint was filed three months ago, as outlined previously, the foundation of the adversary proceeding within the Bankruptcy Court, dates back to 2003.  During the extensive period in which the Creditor Trustee engaged in pre-complaint discovery pursuant to the Rule 2004 Order, the Bankruptcy Court has presided over extensive discovery proceedings and ruled

on discovery disputes.  Bankruptcy Judge Drain has denied a stay pending appeal on enforcement of the Rule 2004 Order, a decision that was upheld by District Judge Marrero.  Judicial economy overwhelmingly supports leaving the reference in place at this pre-trial stage.

Legal v. Equitable Concerns Require Denial of the Motion

Finally, the sixth factor, legal or equitable concerns, also warrants retention of the matter by the Bankruptcy Court, since the claims at issue include a request for equitable relief.  See In re Iridium Operating, LLC, 285 B.R. 822, 836 (S.D.N.Y. 2002) (stating that "a determination as to whether the claims in the adversary proceeding are legal or equitable is effectively a question of whether the defendant has a right to a jury trial on those claims").  While ePlus ultimately may have a right to a jury trial on certain causes of action when -- and if -- a trial is required, the motion to withdraw the reference is premature at this early stage of the proceeding, when the Bankruptcy Court is in a superior position to continue to hear pre-trial matters.  See Wedtech, 94 B.R. at 297.  Accordingly, each of the factors set forth in Orion, individually warrant denial of the motion.  When take together as a whole, the Orion factors require denial of the motion and it is clear that ePlus cannot demonstrate that withdrawal is proper.

## CONCLUSION

In summary, there is simply no reason to withdraw the reference at this point in the adversary proceeding.  ePlus has failed to demonstrate withdrawal is proper either under the mandatory or permissive provisions of Section 157.  Even if they could, the caselaw governing withdrawal of the reference makes absolutely clear that the Bankruptcy Court remains the proper forum to litigate -- at least up until the case is ready

for trial by jury.  Accordingly, the reference to the Bankruptcy Court should not be

disturbed at this time.

WHEREFORE, the Creditor Trustee respectfully requests that this Court enter an

order denying ePlus' Motion to Withdraw the Reference in its entirety.

Dated:   New York, New York
             May 6, 2005

ARENT FOX PLLC
Attorneys for the Creditor Trustee

By:     */s/ Schuyler G. Carroll*
          Andrew I. Silfen (AS-1264)
          Schuyler G. Carroll (SC-0100)
          Michael S. Cryan (MC-4887)
          Jeffrey D. Vanacore (JV-4136)
          1675 Broadway
          New York, NY 10019
          (212) 484-3900